**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

        v.                                                                  07-CR-251S

**RICKY TRECARTIN,**

        **Defendant.**
_____

### REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.

### PRELIMINARY STATEMENT

The defendant, Ricky Trecartin ("the defendant"), is charged in a one count Indictment with conspiring to smuggle more than 6,800 ecstacy tablets into the United States from Canada in violation of Title 21 U.S.C. § 963. (Docket # 20). He has filed a motion seeking "suppression of evidence seized from him or a motor vehicle he was operating" as well as suppression of "any statements made by him as a result of illegally (sic) searching his person or any automobile he was driving." (Docket #30, p. 14).

The defendant has also filed a motion wherein he seeks "suppression of identification of [him] because of a tainted and suggestive identification procedure." (Docket #30, p. 14).

The government has filed it opposition to both motions. (Docket #s 32, 35).

Each of these motions will be separately addressed herein.

## **FACTS**[1]

Ezell A. Butler, a convicted co-conspirator of the defendant, cooperated with the government in its investigation of the defendant, who is a Canadian citizen and resident of Ontario, Canada, by making a number of consenually monitored telephone calls to the defendant on November 28, 2005. Butler called the defendant to make arrangements for a drug transaction with the defendant in Toronto, Canada. On November 29, 2005, Butler called the defendant, which call was consensually monitored by the government, and arrangements were made whereby Butler was to meet the defendant at a designated meeting spot in Toronto, Canada.

---

[1] The facts recited herein are taken from the Government's Response to the Defendant's Pretrial Motions. (Docket #32).

The Ontario Provincial Police were notified of this scheduled meeting, and they were present on the scene when the defendant arrived at the designated meeting place in a vehicle that had previously been described by Butler. The Ontario Provincial Police conducted a search of the defendant's vehicle while it was parked in a McDonald's parking lot in Toronto, Canada and seized "drug ledgers" from the vehicle. These "drug ledgers" are the subject of defendant's motion to suppress.

## DISCUSSION AND ANALYSIS

### A.    The Seizure Of The "Drug Ledgers:"

It is uncontroverted that the defendant is a Canadian citizen and that the search and seizure of November 29, 2005 that he complains of took place in Toronto, Ontario, Canada. In his moving papers, the defendant has merely asserted by way of his attorney's affirmation that the search of his vehicle by the Ontario Provincial Police was done "without his consent." (Docket #30, ¶ 28). The defendant has not provided any evidence to substantiate a claim that the conduct of the Ontario Provincial Police constituted actions that were so extreme so as to "shock the judicial conscience" warranting application of the exclusionary rule. (*See United States v. Maturo*, 982 F.2d 57, 60-61 (2d Cir. 1992), *cert. denied* 508 U.S. 980 (1993). Therefore, this is not an issue that needs to be addressed herein.

The United States Supreme Court has held that the Fourth Amendment does not apply to the search and seizure of property owned by a non-resident alien

which is located in a foreign country. *United States v. Verdigo-Uriquidez*, 494 U.S. 259, 261 (1990). The Second Circuit Court of Appeals has made a similar ruling by holding that "the Fourth Amendment and its exclusionary rule do not apply to the law enforcement activities of foreign authorities acting in their own country." *United States v. Busic*, 592 F.2d 13, 23 (2d Cir. 1978). It is also pointed out that the defendant has failed to produce any evidence that would establish sufficient contacts with the United States so as to entitle him to protection of the Fourth Amendment. *Verdigo-Uriquidez, supra* at 271. Further, the defendant has not presented any evidence to indicate that the Ontario Provincial Police were controlled or manipulated by United States agents in conducting the search of defendant's vehicle in Canada and seizing evidence therefrom on November 29, 2005. (*See United States v. Fantin*, 130 F. Supp.2d 385, 386 (W.D.N.Y. 2000)).

The fact that there may have been cooperation between the Ontario Provincial Police and the United States agents does not automatically cause the Ontario Provincial Police to be agents of the United States thereby bringing the Fourth Amendment into play. *United States v. Paternina-Vergara*, 749 F.2d 993, 998 (2d Cir. 1984), *cert. denied* 469 U.S. 1217 (1985); *United States v. Maturo*, 982 F.2d 57, 61 (2d Cir. 1992), *cert. Denied* 508 U.S. 980 (1983).

Therefore, it is hereby RECOMMENDED that defendant's motion to suppress the evidence seized from his vehicle on November 29, 2005 by the Ontario

Provincial Police be DENIED.

### B.  Defendant's Motion To Suppress Statements:

The defendant has failed to cite any statements made by him either to the Ontario Provincial Police or to United States law enforcement authorities in his "motion to suppress statements."  As a result, it is hereby RECOMMENDED that this motion be DENIED as being moot.

### C.  Defendant's Motion To Suppress "Identification:"

The defendant alleges in his motion papers that the "identification procedure used in this case was materially flawed, prejudiced, and suggestive" and therefore, the "identification process was fatally flawed and tainted which should cause the identification to be suppressed."  (Docket #30, Attorney's Affirmation, ¶s 22, 26).

The government admits that a "photographic spread" or "out-of-court photo array" was conducted wherein an array of six (6) photographs of males, including the defendant, were shown to defendant's co-conspirators Butler and Vicki R. Peterson on October 26 and 29, 2007 respectively.  Copies of these photo arrays were attached to the Government's Supplemental Memorandum In Opposition (Docket #35 as Exhibits A and B respectively).  The photo arrays used by the government were presented to this Court for its review at the time of oral argument of the defendant's motion to suppress.

The defendant alleges that "the photographic array was improper and suggestive in its composition because [the defendant's] photograph is significantly different than the others in clarity, physical characteristics, and color" thereby causing the procedure to be "unfairly tainted." (Docket #30, Attorney's Affirmation, ¶ 24).

The United States Supreme Court has held that pretrial photo identification should be suppressed "only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968).

In resolving the issue of pretrial photo identification raised by the defendant, guidance has been provided by the Second Circuit Court of Appeals by stating:

> The linchpin for admissibility of identification testimony is reliability. *Manson v. Brathwaite*, 482 U.S. 98, 106-07 n. 9, 114, 97 S.Ct. 2243, 2249 n. 9, 2253, 53 L.Ed.2d 140 (1977). In reviewing a due process challenge to the admission of such testimony, we must look at the facts of each case and the totality of the surrounding circumstances. *See id; Simmons v. United States*, 390 U.S. 377, 383-84, 88 S.Ct. 967, 970-71, 19 L.Ed.2d 1247 (1968); *accord Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). The ultimate questions are whether the pretrial proceedings have been conducted in a manner that was unnecessarily suggestive and whether, in all circumstances, there is "a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. at 384, 88 S.Ct. at 971; *see Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).
>
> When a witness has made a pretrial identification, the analysis of whether he is to be permitted to identify the

> defendant at trial normally requires a one-step or two-step inquiry. The first question is whether the pretrial identification procedures were unduly suggestive of the suspect's guilt. If they were not, the trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification. In that circumstance, any question as to the reliability of the witness's identifications goes to the weight of the evidence, not its admissibility. *See, e.g., Jarrett v. Headley*, 802 F.2d 34, 42 (2d Cir. 1986).
>
> If the pretrial procedures were unduly suggestive, the analysis requires a second step; the court must then weigh the suggestiveness of the pretrial process against factors suggesting that an in-court identification may be independently reliable rather than the product of the earlier suggestive procedures. *See Manson v. Brathwaite*, 432 U.S. at 114, 97 S.Ct. at 2253; *Sims v. Sullivan*, 867 F.2d 142, 145 (2d Cir. 1989); *Dickerson v. Fogg*, 692 F.2d 238, 244 (2d Cir. 1982). The factors to be considered are "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. at 199-200, 93 S.Ct. at 382; *accord Manson v. Brathwaite*, 432 U.S. at 114, 97 S.Ct. at 2253.

*United States v. Maldanado-Rivera*, 922 F.2d 934, 973-974 (2d Cir. 1990).

The defendant has made a very limited claim of impropriety in the pretrial photo identification process, *i.e.*, the array of six photographs shown to his co-conspirators Butler and Peterson was defective because the photograph of the defendant was "significantly different than the others in clarity, physical characteristics, and color." (Docket #30, Attorney's Affirmation, ¶ 24). This Court has viewed the photo array shown to Butler and Peterson and finds that defendant's claim is without merit. The array depicts six (6) males all of approximately the same age with similar hair styles

and general facial characteristics.  There is nothing about the "color" of the defendant's photo or the "clarity" of the photos that would cause this Court to conclude that the photo array at issue was "unduly suggestive" of the defendant.  (*See United States v. Bautista*, 23 F.3d 726, 731 (2d Cir.), *cert. denied*, 513 U.S. 862 (1994).

It is also pointed out that the identification of the defendant from the photo array was made by the co-conspirators of the defendant, persons who had knowledge of the defendant prior to the photo identification process.  As co-conspirators, they had opportunity to make extended observations of the defendant during the course of the alleged conspiracy.  Both Butler and Peterson had supplied "descriptions" of the defendant as well as "descriptions" of his vehicle "based upon their earlier meetings with the defendant."  (Docket #32, p. 4).  The Second Circuit Court of Appeals has held that "identification by [an] accomplice tends to be inherently more reliable than identification by [a] victim or law enforcement officer who sees [the] perpetrator for only a short time."  *United States v. Maldano-Rivera, supra* at 976; *United States v. Marchand*, 564 F.2d 983, 985-986 (2d Cir. 1977), *cert. denied*, 434 U.S. 1015 (1978); *United States v. Tortora*, 30 F.3d 334, 338 (2d Cir. 1994).

The differences complained of by the defendant as to the photo array in question "would hardly suggest to an identifying witness that the defendant was more likely the culprit."  *United States v. Bautista, supra* at 731; *United States v. Archibald*, 734 F.2d 938, 940 (2d Cir. 1984).

Since I have found that the pretrial photo identification of the defendant was not unduly suggestive, there is no need or requirement to proceed to the second step of analysis as set forth by the Court of Appeals in *Maldanado-Rivera, supra*. Therefore, it is RECOMMENDED that defendant's motion to suppress "identification of [him]" be in all respects DENIED; and it is hereby

**ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir.

1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

          *S/ H. Kenneth Schroeder, Jr.*
          **H. KENNETH SCHROEDER, JR.**
          **United States Magistrate Judge**

**DATED:**    **Buffalo, New York**
              **March 20, 2009**